WISCONSIN OAK LUMBER COMPANY, Appellant, vs. LAURSEN, Respondent.

*December 12, 1905—January 9, 1906.*

*Replevin: Property sold for taxes: Assessment to person other than owner: Estoppel by failure to assert title.*

1. The owner of personal property is not precluded from maintaining replevin therefor by the mere fact that it had been seized and sold for taxes as the property of another person to whom it had been assessed.

2. Logs were assessed to a former owner who, prior to the assessment, had transferred them to a corporation of which he was president. The general manager of the corporation, having full authority and control over the logs, was present when the assessment was made, went before the board of review to get the valuation reduced, and, with knowledge that the tax stood against the former owner, after repeated attempts to compro-

mise on a smaller sum, repeatedly promised to pay the tax.
He was present when lumber manufactured from the logs was
levied upon by the town treasurer and when it was sold for
the tax, but did not claim or disclose to the officers or to the
purchaser, until after the sale, that the lumber belonged to
the corporation and not to the former owner. *Held*, that the
corporation was estopped to assert its ownership of the lumber
sold, as against the purchaser at the tax sale.

APPEAL from a judgment of the circuit court for Polk
county: A. J. VINJE, Circuit Judge. *Affirmed.*

This is an action of replevin to recover the possession of a
quantity of lumber or the sum of $4,440, the value thereof, in
case delivery could not be had, with interest thereon from
March 21, 1903. The defendant answered by way of admis-
sions, denials, and counter allegations to the effect that the de-
fendant became the owner of the lumber by purchasing the
same at a town treasurer's tax sale thereof, duly and regularly
held by the town treasurer March 21, 1903, pursuant to a tax
roll and warrant in his hands regular on its face, directed to
him for collection; that such sale was so made for the unpaid
personal property tax duly assessed to Fred W. Upham in
1902 and duly levied in said warrant and roll to said Upham;
that said lumber was a part of the product of the logs on ac-
count of which said tax was so assessed and levied, and was
at the time of such assessment and at the time of such sale to
the defendant the property of said Upham; that said Upham
is the president and manager and owner of the majority of
the stock of the plaintiff corporation; that the plaintiff is es-
topped to claim ownership of said lumber or to deny that said
Upham is the owner thereof, because, at the time of the as-
sessment of the logs from which the lumber was manufactured
for taxation, one W. D. Bartell, the bookkeeper and manager
in charge of such property for such owner, informed the as-
sessor, in answer to inquiries of him as to the ownership of
such property for the purposes of such assessment, as he well
knew; that the logs were the property of said Upham; that

afterwards, and at the time of the seizure of such lumber upon the tax warrant by the town treasurer, said Bartell, still in charge thereof, pointed out to the said treasurer said lumber, and then and there stated that said lumber and all the lumber then in the yard where it was situated was the property of Fred W. Upham, and then and there turned over to said treasurer said lumber to be sold for such tax, if not paid before sale; that, after said assessment and before sale, said Fred W. Upham repeatedly talked with the town officers, including the assessor, members of the town board, and treasurer, concerning such tax and the amount thereof, and claimed that said tax was too high, because the logs were assessed full scale instead of lumber scale; that the said Fred W. Upham tried to compromise and adjust the amount of such tax with said officers, and at one time promised to pay said tax to the town treasurer and at another time to the county treasurer, but at no time did he, or any one else, prior to the commencement of this action, state to the officers or any of them or to the defendant that said property was the property of the plaintiff or was not the property of said Upham, or that the tax was not properly assessed to him; that on the evening before the sale the plaintiff's attorney and said Bartell met with the town board and tried to compromise and adjust said tax, and offered $500 in payment thereof, claiming to represent said Upham, without intimating that any one else was interested; that on the next day said attorney and Bartell attended the sale, and Bartell then said privately to the treasurer, in substance, "I forbid you to sell this lumber, as the sale is illegal," but gave no reason why it was so claimed to be illegal; that the defendant had no notice or knowledge at the time he so purchased said lumber that it was claimed by any one that said assessment, tax, levy, or sale, or any of them, were not regular, legal, and valid, and that said tax proceedings were regular, valid, and complete.

At the close of the testimony the court directed a verdict in favor of the defendant to the effect (1) that he was the

owner of the property and entitled to the possession thereof; (2) that the plaintiff unjustly took the same in this action; (3) that the value thereof is $4,440; (4) that the defendant has sustained damages, by reason of plaintiff's unjust taking and detention of the property, in the sum of $12. From the judgment entered upon such verdict in accordance therewith, with costs and disbursements as taxed, the plaintiff appeals.

For the appellant there was a brief by *Frank B. Dorothy,* attorney, and *Bundy & Wilcox* and *T. F. Frawley,* of counsel, and oral argument by *C. T. Bundy.* To the point that replevin will lie where the property of one person is taken to satisfy a tax or assessment made against another person, they cited 24 Am. & Eng. Ency. of Law (2d ed.) 504; Cobbey, Replevin ,(2d ed.) § 340; *Heagle v. Wheeland,* 64 Ill. 423; *Vocht v. Reed,* 70 Ill. 491 (dissenting opinion); *Travers v. Inslee,* 19 Mich. 98; *Tousey v. Post,* 91 Mich. 631; *Whittaker v. Fuller,* 96 Mich. 141; *Stockwell v. Vietch,* 15 Abb. Pr. 412; *Dubois v. Webster,* 7 Hun, 371; *Hallock v. Rumsey,* 22 Hun, 89; *Clark v. Skinner,* 20 Johns. 465; *Lake Shore & M. S. R. Co. v. Roach,* 80 N. Y. 339; *Power v. Kindschi,* 58 Wis. 539, 542; *C. C. Thompson L. Co. v. Hynes,* 84 Wis. 353.

For the respondent there was a brief by *W. T. Kennedy, C. C. Coe,* and *A. E. Coe,* and oral argument by *Mr. Kennedy* and *Mr. C. C. Coe.* To the point that plaintiff is estopped to question the validity of the tax or of the sale, they cited *Kaehler v. Dobberpuhl,* 60 Wis. 256; *Kaehler v. Dobberpuhl,* 56 Wis. 480; *Enos v. Bemis,* 61 Wis. 656; *Massing v. Ames,* 37 Wis. 645; *N. Boyington Co. v. Southwick,* 120 Wis. 184; *Norton v. Kearney,* 10 Wis. 443, 453; 11 Am. & Eng. Ency. of Law (2d ed.) 421–424; *Vilas v. Mason,* 25 Wis. 310; *Moller v. J. L. Gates L. Co.* 119 Wis. 548.

CASSODAY, C. J. 1. It is claimed on the part of the defendant that the action is not maintainable because the lumber had been taken for a tax. The affidavit for the writ of re-

plevin stated, in the language of the statute, that the lumber had "not been taken for a tax, assessment or fine, pursuant to the statute," etc. Sec. 2718, Stats. 1898. But such affidavit was not conclusive of the fact so stated. *Kaehler v. Dobberpuhl*, 60 Wis. 256, 18 N. W. 841. It appears from the record that it was not taken for a tax levied against the plaintiff, but for a tax levied against Fred W. Upham. The corresponding section of the statute regulating actions of replevin in courts of justices of the peace is much stronger and declares that:

"Such action shall not be maintained for any property taken by virtue of any warrant for the collection of any tax in pursuance of any statute of this state." Sec. 3732, Stats. 1898.

Nevertheless, it was held by this court long ago, in effect, that such statute was for the protection of the officer, and did not preclude such action against the purchaser of the property at a sale made under the tax warrant. *Power v. Kindschi*, 58 Wis. 539, 17 N. W. 689. In a later case the court went further and held that the section last named did "not apply to a case in which the property seized belonged to a person not in privity either with the owner of the property assessed or the person erroneously named as owner in the tax list." *C. C. Thompson L. Co. v. Hynes*, 84 Wis. 353, 54 N. W. 576. We must hold that the plaintiff was not precluded from maintaining the action merely because the property was seized by the officer as the property of Fred W. Upham against whom the tax warrant was issued.

2. Counsel for the plaintiff contends that the assessment in question was void because the logs out of which the lumber was manufactured were not assessed to the owner (the plaintiff in this action), but to Fred W. Upham, who had transferred all his right, title, and interest in the logs to the plaintiff May 6, 1901, a year before the assessment in question was made. It is certainly true that, except in cases not applicable

here, and under the statute as it stood at the time of the assessment, personal property liable to taxation was required to "be assessed to the owner thereof." Sec. 1044, Stats. 1898; ch. 229, Laws of 1899; *Fond du Lac v. Estate of Otto,* 113 Wis. 39, 43, 88 N. W. 917. The assessment is merely to ascertain the value of the property; but the tax is levied against the owner and collected as a debt against him. Here the property was not assessed to the plaintiff in this action, who was the owner thereof at the time of the assessment, but to Fred W. Upham, the former owner of the property, who happened to be the president of this plaintiff; and he seems to have been treated as the owner of the property throughout all the proceedings. As indicated in the foregoing statement, the defense alleged in the answer and here relied upon is that the plaintiff is estopped by the conduct of its general manager, Bartell, in sole charge of the property throughout all of such proceedings. It is conceded that Bartell had general charge and control over all the logs and lumber in question at the time of such assessment in May, 1902, and that he had authority at that time and for the remainder of the tax year as to the scheduling of the property and its valuation; that he continued in such general charge and control down to the time of the commencement of this action; that he was present in the yard when the assessment was made; that he got the amount of the assessment from the assessor; that the assessor asked him on one or two occasions when Mr. Upham would be there and he told him; that the assessor gave him a statement of this tax; that he got a statement of this tax once from the assessor's books; that he went before the board of review to get the amount of the assessment on the logs reduced; that the collector gave him a statement of the tax against Fred Upham; that he knew in January, 1903, that the tax stood against Fred Upham; that he knew that fact prior to the levy; that he repeatedly promised to pay the tax; that he was present in the yard when the town treasurer, accompanied by the

district attorney, levied upon the lumber; that the town treasurer then said to him, "If you will show me what piles you are going to ship I will not levy on them;" that Bartell then did show him the piles he was going to ship and the town treasurer levied upon other piles; that just before the sale Bartell made this statement to the town treasurer: "I represent the owners of this lumber, and I refuse to let you sell it, as the sale is illegal." Other witnesses stated that he said: "Mr. Anderson, I forbid you this sale. It is illegal." All agree, and it is conceded, that Bartell made no claim on any of said occasions that the plaintiff was the owner of such lumber. There is other uncontradicted evidence to the effect that Bartell, so in charge of the lumber and necessarily knowing all about the transfer of the logs to the plaintiff and the ownership of the lumber, participated in the assessment of the property, in his attempt to have the amount of it reduced by the board of review, in his repeated attempts to get the collector to accept less than the amount of the tax levied, and, after failing in such attempts, in his repeated promises to pay the tax, in his pointing out the piles of lumber which were soon to be shipped, on the promise of the collector that he would levy upon other lumber, in his presence at the time of sale, without ever claiming or disclosing to the assessor, the board of review, or the collector that the property, or any part thereof, did not belong to Upham, or that it did belong to the plaintiff. There is no pretense that the defendant, who purchased at the tax sale, had any knowledge or information that the property did not belong to Upham or that it did belong to the plaintiff.

The question recurs whether the defense of estoppel was established by the evidence referred to. The general doctrine of estoppel is well understood. Thus, it was held by this court many years ago:

"An owner of property, who stands by and sees a third party selling it under claim of title, without asserting his own

title, or giving the purchaser any notice thereof, is estopped, as against such purchaser, from asserting it afterward." *Vilas v. Mason,* 25 Wis. 310.    See *McCord.v. Hill,* 117 Wis. 306, 314, 315, 94 N. W. 65, and cases there cited; *Two Rivers Mfg. Co. v. Day,* 102 Wis. 328, 78 N. W. 440.

In this last case the defendants applied to the plaintiff to fix a price upon certain lands, including the tract·in suit, and the plaintiff disclaimed being the owner of that tract.    Relying.upon such disclaimer the defendants purchased the tract from one B., who held a tax deed thereon; and it was held that the plaintiff was estopped by such disclaimer from asserting title as the original owner.    In a Michigan case it was held:

"One cannot maintain assumpsit to recover back the amount paid by him in satisfaction of a tax which, as a member of the board of supervisors, he voted to impose without presenting objections to its levy that he knew of at the time."    *Wood v. Norwood,* 52 Mich. 32, 17 N. W. 229.

So it has been held in Illinois·:

"A taxpayer who attends an election called in a school district, and in person seconds a motion to raise money by borrowing and issuing bonds of the district, will be estopped from questioning the validity of what was done under the authority of those proceedings, . . . and he will not be allowed to dispute the legality of a tax levied to pay the interest or principal of such bonds, when issued under the vote of such meeting."    *Thatcher v. People,* 98 Ill. 632.

So in Ohio it has been held that parties who have invoked proceedings under an unconstitutional statute, "and actively participated in such proceedings, from the signing of the petition to the making of the assessment for the improvement of a road, under the act, are estopped from enjoining the collection of an assessment for the payment of the costs incurred in the proceedings so invoked by them."    *Mott v. Hubbard,* 59 Ohio St. 199, 53 N. E. 47.    In a case in Nebraska the plaintiff was the.manager of a corporation and listed and scheduled for taxation the property of the company as his individual prop-

erty; and it was held, in effect, that he was estopped from claiming that the property so listed and scheduled was not his 'individual property.

Of course, caution should be used in applying the doctrine of estoppel to such tax proceedings.    2 Cooley, Taxation (3d ed.) 1514–1521, and cases there cited.    But we are constrained to hold that the verdict was properly directed in favor of the defendant.·

*By the Court.*—The judgment of the circuit court is affirmed.

